**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Yitchak Ijo PERLMUTER, Defendant-Appellant.**

**No. 81–1533X.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1982.

Decided Dec. 2, 1982.

Douglas Dalton, Los Angeles, Cal., for defendant-appellant.

Mark Bonner, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before ANDERSON, FERGUSON and NELSON, Circuit Judges.

NELSON, Circuit Judge:

After a court trial, appellant was found guilty of knowingly procuring naturalization contrary to law in violation of 18 U.S.C. § 1425(a) (1976). The indictment alleged that appellant misstated orally and on his Application to File Petition for Naturalization that he had not been convicted of any offenses other than traffic violations. An exhibit (Exhibit 4) was admitted into evidence, however, which indicated that appellant had been convicted of a number of offenses in Israel including (among others) perjury, assault, theft, and obtaining goods by false pretenses. Appellant was fined $5000 and sentenced to six months in prison. The trial court also cancelled appellant's certificate of naturalization pursuant to 8 U.S.C. § 1451(g) (1976). Perlmuter appeals from the conviction and the cancellation of his certificate claiming that two exhibits (Exhibits 3 and 4) should not have been received into evidence. He contends that neither exhibit was properly authenticated and that Exhibit 4 was inadmissible hearsay, received into evidence in violation of the Federal Rules of Evidence ("FRE") and the confrontation clause. We reverse.

### I. FACTS

Appellant immigrated to the United States from Israel and was granted lawful permanent residence in 1968. In 1974, appellant was granted naturalization and became a United States citizen.

Gregory Ball, an examiner for the Immigration and Naturalization Service ("INS"), testified that he conducted the preliminary investigation of appellant's application for citizenship. Mr. Ball stated that if appellant had revealed any convictions, Ball would have requested a further investigation concerning appellant's good moral character before making a recommendation on appellant's application for citizenship.

Harold Nowlan, an investigator with the INS, testified that he contacted an immigration investigator in Washington, D.C. who served as liaison to Interpol, and requested a certified copy of any criminal record for appellant held by the Israeli National Police. He received a document, identified as Exhibit 4, which purports to list four convictions suffered by appellant in Israel between 1955 and 1964. He also received an identification form, marked as Exhibit 3, which purports to contain the fingerprints of the person whose criminal record is shown in Exhibit 4. These fingerprints, it is stipulated, matched appellant's.

Appellant claims that neither Exhibit 3 nor Exhibit 4 was properly authenticated according to the FRE. He also claims that Exhibit 4 should have been excluded from evidence as hearsay not falling within any recognized exception. Finally, appellant contends that the admission of Exhibit 4 violated his sixth amendment right to confrontation of the witnesses against him.

### II. AUTHENTICITY

■ It appears that the trial court decided that Exhibits 3 and 4 were authentic, based only on the documents' "aura of authenticity" and not on compliance with the FRE. The standard of review of a district court's decision regarding authenticity of evidence is the abuse of discretion standard. *United States v. Cox*, 633 F.2d 871, 874 (9th Cir.1980) *cert. denied*, 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981); *United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir.), *cert. denied*, 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135 (1981). This is because authenticity is merely an aspect of relevancy. Fed.R.Evid. 701 advisory committee note.

■ Although the trial court was correct in finding that neither Rule 901 nor 902(3) was complied with, the court did abuse its discretion in holding the evidence authentic and admissible. This circuit requires strict compliance with the authenticity rules. *Sandoval-Vera v. Immigration & Naturalization Service*, 667 F.2d 792, 793 (9th Cir.1982); *Iran v. Immigration & Naturalization Service*, 656 F.2d 469 (9th Cir. 1981); *Chung Young Chew v. Boyd*, 309 F.2d 857, 866–67 (9th Cir.1962).

In this case, the extrinsic evidence, consisting of the testimony of an INS agent, was not enough to sustain a finding of authenticity under 901(a). That testimony was not "sufficient to support a finding that the matter in question is what the proponent claims." Fed.R.Evid. 901(a). In addition, the requirements of 902(3) for self-authentication of foreign public documents were not met.[1] The trial court was correct in its determination that the first requirement of 902(3) was not met; that requirement is that the document be executed or attested by a person who is acting in an official capacity and *who is authorized* by the laws of that country to make the attestation or execution. The trial court was not satisfied that Herstig, who signed the documents, was properly authorized. We agree, since no evidence was presented as to the nature of Herstig's authority or position.[2]

The FRE offers generous opportunity to authenticate by presentation of sufficient evidence to support the authenticity. of a document. Alternatively, if 902(3) is met the document is self-authenticating. But the rules offer no third means of authentication; certainly it is not enough that the documents present an "aura of authenticity." Thus, the trial court abused its discretion by admitting the unauthenticated documents into evidence.

### III. HEARSAY OBJECTIONS

█ Appellant also claims that Exhibit 4 was admitted in violation of the prohibition against hearsay evidence in Fed.R.Evid. 802, since that exhibit is hearsay that does not fit within any of the exceptions to the prohibition provided in Rule 803. The trial court's decision to admit evidence over hearsay objections is reviewed under an abuse of discretion standard. *United States v. Burreson,* 643 F.2d at 1349.

### A. THE PUBLIC RECORDS EXCEPTION, Fed.R.Evid. 803(8)

The public records exception to the rule against admission of hearsay evidence is found in Fed.R.Evid. 803(8), which states in part:

> Records, reports, statements or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel . . . .

█ Because there is no indication that Herstig, the person who signed the conviction report (Exhibit 4) and the identification form (Exhibit 3), had first hand knowledge of the convictions and because of the probability of multiple levels of hearsay in this situation, Exhibit 4 does not fit within Rule 803(8). Fed.R.Evid. 803 advisory committee note; *United States v. Hudson,* 479 F.2d 251, 254–55 (9th Cir.1972), *cert. denied,* 414 U.S. 1012, 94 S.Ct. 377, 38 L.Ed.2d 250 (1973). It is apparent that Herstig, who

1. Fed.R.Evid. 902(3) reads:

   Foreign public documents. A document purporting to be executed or attested in his official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made by a secretary of embassy or legation, consul general, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States. If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification.

2. The second requirement of 902(3) is also not met in this case since there was no final certification which attested the official position of Herstig. Since the documents were not properly attested and since no good cause was shown for the lack of final certification, the "good cause" exception of 902(3) is not met. .

signed the conviction report, did not act on the basis of first hand knowledge since the alleged convictions had occurred from 17 to 26 years earlier in a variety of different courts. Since there is no countervailing evidence that suggests that Herstig did possess first hand knowledge, the evidence cannot be admitted. *Id.* at 254–55.

In addition, there is no evidence of any duty on the part of Herstig or anyone else to record this information. It may have been prepared just for the INS request and not as part of any duty to record day to day. Fed.R.Evid. 803(6), (8) advisory committee notes.[3] This is another factor preventing us from finding the 803(8) exception helpful to the Government here.[4]

## B. THE JUDGMENT OF PREVIOUS CONVICTION EXCEPTION, Fed.R.Evid. 803(22)

■ Rule 803(22), which allows "evidence of a final judgment" to be used "to prove any fact essential to sustain the judgment," was intended as a vehicle for proving underlying facts when a judgment of conviction is presented.[5] Here, we have a situation where appellant would have the court stretch the rule to allow the fact of conviction itself to be proved by lesser evidence. The fact of a judgment of conviction is a prerequisite to the use of this rule, not the thing to be proved. Rule 803(22) will not

serve the Government without introduction into evidence of the judgment of conviction. *See Lloyd v. American Export Lines,* 580 F.2d 1179, 1190 (3d Cir.), *cert. denied,* 439 U.S. 969, 99 S.Ct. 461, 58 L.Ed.2d 428 (1978); J. Weinstein, *Weinstein's Evidence* ¶ 803(22)[01] at 803–271 *et seq.*

## C. THE RESIDUAL EXCEPTION, Fed. R.Evid. 803(24)

■ Rule 803(24) provides a residual exception for evidence which does not meet the requirements of any of the other exceptions, but which has equivalent circumstantial guarantees of trustworthiness and is more probative than any other evidence that the proponent can procure through reasonable efforts. The trial court did not address the issue of whether Exhibit 4 could be admitted under 803(24)[6] because it admitted the document on other grounds. The issue is, however, raised on appeal. There is nothing indicating that Exhibit 4, when compared with other hearsay exceptions, has "equivalent circumstantial guarantees of trustworthiness." Fed.R.Evid. 803(24). In addition, there is nothing in the record to indicate that through reasonable efforts the government could not procure more probative evidence such as the actual judgments of conviction. As a result, the evidence cannot be admitted under this exception.

**3.** Nor does Exhibit 4 set forth the activities of the office or agency. Fed.R.Evid. 803(8)(A).

**4.** The Government's argument that 18 U.S.C. § 3578 helps them is misleading at best. The statute makes clear that it is only copies of a conviction made and certified *by a court* which are prima facie evidence. Such a certified record does not exist in this case.

**5.** The full text of Rule 803(22) reads:

Judgment of previous conviction. Evidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment, but not including, when offered by the Government in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused. The pendency of an appeal may be shown but does not affect admissibility.

**6.** Rule 803(24) reads:

Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

## IV. CONCLUSION

For the reasons discussed above the case is reversed. Because of our holdings on the authenticity and hearsay issues, we need not reach the confrontation clause claim. *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688, 711 (1936) (Brandeis, J., concurring).

REVERSED.

J. BLAINE ANDERSON, Circuit Judge, specially concurring:

I concur only in the judgment. I consider the government's effort to be inadequate since it failed to take steps to obtain documents that complied with the Federal Rules of Evidence, nor determine if other documentation was available.

I would leave to another day any discussion of the "good cause" exception in Fed.R. Evid. 902(3) and "equivalent circumstantial guarantees of trustworthiness" in Fed.R. Evid. 803(24).

I CONCUR IN THE JUDGMENT.

FERGUSON, Circuit Judge, concurring:

I concur in Judge Nelson's opinion for the reasons expressed. In addition, there are other reasons why the defendant's conviction must be reversed.

Government Exhibits 3 and 4 were the only evidence offered to prove that the defendant was convicted of crimes in Israel before entering this country. While the precise origin of these documents is unclear, they were obtained through Interpol. Interpol is a widely known international police organization. It is not an agency of the Israeli Government and it certainly is not a part of the government of this country. A record of convictions from Interpol has no more authority in the legal proceedings of the United States than records of alleged convictions that may be kept by Lloyd's of London for insurance purposes.

The documents are not signed by a person having either appropriate authority or official capacity. Both exhibits bear the signature "Herstig" above the words "Dept. of Automatic Data Processing." The identity of Herstig is never revealed, and his official position, employment by the Israeli Government and his authorization by that government's law to make these attestations are never discussed.

Exhibit 4 can best be described as a police report of conviction on a "rap sheet." Such documents have never been allowed as evidence of a conviction arising from an American court proceeding, and therefore certainly cannot be used to prove convictions in a foreign nation.

In order for a federal prosecutor to prove the fact of conviction of a person in a state court, he must comply with 28 U.S.C. § 1738,[1] which requires that records of court proceedings of the states be authenticated by attestation of the court clerk and the certification of a judge of the court. In *Clainos v. United States,* 163 F.2d 593 (D.C. Cir.1947), the court held that a record of convictions made by a police agency is not admissible as evidence of those convictions. That court pointed out that while rap sheets may be useful to the police in their law enforcement capacity, the record of convictions for the purposes of a court must come from a court itself in order to be considered reliable. *Id.* at 596.

In *United States v. Scott,* 592 F.2d 1139 (10th Cir.1979), the court held that a federal prosecutor may use a rap sheet to cross-ex-

---

1. Section 1738 states:

    The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

    The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

    Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

amine a witness regarding prior convictions, but it clearly stated that such a document is not admissible as a public record of the convictions. *Id.* at 1143. Rap sheets are not based on first-hand knowledge of the matters being recorded; only the court where the conviction occurred has such knowledge.

What is required of American police and courts must be required of foreign police and courts. The reliability accorded foreign police records in our courts cannot be greater than that accorded the police records of this country.